IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 22-cv-00837-RM

Bankruptcy No. 19-19340-KHT

Adversary No. 20-01199-KHT

IN RE: LINN W. JENSEN,

    Debtor.

___

LINN W. JENSEN,

    Appellant,

v.

THE BANK OF NEW YORK MELLON f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-1, Mortgage Pass-Through Certificates, Series 2005-1, and
NEWREZ LLC d/b/a Shellpoint Mortgage Servicing,

    Appellees.

___

**ORDER**
___

    In this bankruptcy appeal, Appellant challenges the Claim Order by the United States Bankruptcy Court for the District of Colorado which allowed a claim by Appellee The Bank of New York Mellon ("Bank"). (ECF No. 23.) The appeal has been briefed and is ripe for review. (ECF Nos. 28, 32, 37, 38.) The Court affirms the Claim Order for the reasons below.

I.  **BACKGROUND**

In October 2019, Appellant filed a petition for bankruptcy, listing on her schedules real estate located at 607 Teal Circle, Longmont, CO 80503 ("Property").  The Bank, which held a note encumbering the Property, filed a proof of claim through its servicer, Appellee NewRez ("Shellpoint"), in January 2020, followed by an amended proof of claim two years later. Appellant initiated an adversary proceeding in June 2020, objecting to the claim.  After a two-day bench trial, the bankruptcy court issued the Claim Order and entered judgment in Appellees' favor.

The bankruptcy court found that Mark Ashmore mortgaged the Property in December 2004, signing a note in the amount of $276,650 secured by a deed of trust signed by him and his then-wife, Sonya Ashmore, and requiring monthly payments through 2035.  (ECF No. 1-2, Claim Order at 1-2.)  The Bank subsequently became the owner of the note.  (*Id.* at 2.)

By June 2010, the loan was in default due to missed payments.  (*Id.*)  The Bank sent Mr. Ashmore a notice of intent to accelerate, informing him that the note would be accelerated if he did not cure the default.  (*Id.*)  A year later, the default had not been cured and the Bank commenced foreclosure proceedings by filing a Notice of Election and Demand for Sale ("NED") with the Boulder County Public Trustee.  However, the Bank did not proceed with the sale, and it later withdrew the NED.  (*Id.*)

The Bank restarted foreclosure proceedings by filing a second NED in January 2013. (*Id.*)  The public trustee proceeded to auction the Property, and the Bank's agent, Resurgent Capital Services, LP ("Resurgent") was the highest bidder.  (*Id.*)  After Resurgent paid Mr. Ashmore $2,000 in relocation assistance to get him to move out, the sale was set aside at

Resurgent's request, and the note and deed of trust were reinstated. (*Id.*) The Bank then withdrew the 2013 NED. (*Id.*)

In April 2015, the Bank sent Mr. Ashmore another notice of default and intent to accelerate, providing him with another opportunity to cure the default. (*Id.* at 9.) The Bank also filed a third NED. Even though Mr. Ashmore did not cure the default, the Bank later withdrew this NED as well. (*Id.*)

In August 2017, the Ashmores quitclaimed their interests in the Property to Appellant, a real estate broker with experience buying and selling properties in foreclosure, for $20,000. (*Id.* at 11.)

In December 2018, the Bank sent new notices of default and intent to accelerate to the Ashmores. (*Id.*) Mr. Ashmore again failed to cure the default—by this point, no payment had been made since 2010. (*Id.*) In March 2019, the Bank then filed a fourth NED and obtained an order authorizing sale from the Boulder County District Court. (*Id.* at 12.)

Before the Bank could complete the foreclosure sale, Appellant filed her bankruptcy case in October 2019. (*Id.*) The Bank then filed its proof of claim, prompting Appellant to file the underlying adversary proceeding objecting to the Bank's claim on statute of limitations grounds. (*Id.*)

The bankruptcy court precluded Appellant from presenting at trial evidence about Mr. Ashmore's bankruptcy discharge in 2012 because she did not properly disclose it. Following trial, the bankruptcy court rejected Appellant's statute of limitations argument and allowed the Bank's claim, concluding that after the Bank exercised its right to accelerate the remaining balance due on the note, it "waived acceleration when it withdrew each NED and

when it subsequently requested payment on less than the full, accelerated amount of the loan." (ECF No.1-2 at 13.)  Thus, the bankruptcy court found the Bank abandoned acceleration when it withdrew the 2011, 2013, and 2015 NEDs, and therefore the Bank's lien was not extinguished by the operation of the statute of limitations six years after the first acceleration or at any subsequent point before the adversary proceeding began.  (*Id.* at 12-14.)

This appeal followed.

## II.     LEGAL STANDARDS

The Court functions as an appellate court with respect to the Claim Order.  *See In re D.E. Frey Grp., Inc.*, 387 B.R. 799, 803 (D. Colo. 2008).  Thus, the "bankruptcy court's legal conclusions are reviewed *de novo*, and factual findings are reviewed for clear error."  *Id.* (citing *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008)).  Where, as here, the material facts are not in dispute, the issue of whether the statute of limitations bars a claim may be decided as a matter of law.  *See Bank of N.Y. Mellon v. Peterson*, 442 P.3d 1006, 1010 (Colo. App. 2018) (citing *Trigg v. State Fram Mut Auto. Ins.*, 129 P.3d 1099, 1101 (Colo. App. 2005)).

## III.    DISCUSSION

There is no dispute that the Bank first accelerated the mortgage in 2010.  According to Appellant, this triggered the six-year statute of limitations, which expired in 2016, and therefore the Bankruptcy Court should not have allowed the Bank's claim.  *See* Colo. Rev. Stat. § 13-80-103.5 (six-year general limitation of actions); § 38-29-207 (lien extinguished when action barred); *see generally Igou v. Bank of Am., N.A.*, 459 P.3d 776, 780 (Colo. App. 2020).  Appellant contends the bankruptcy court erred by concluding that the Bank abandoned its acceleration of the mortgage—in 2011 or at any other time—because the Bank took no

4

affirmative act to do so. She also contends that allowing lenders to unilaterally abandon acceleration and effectively evade the statute of limitations produces inequitable and absurd results.

The Bank responds by arguing that the statute of limitations did not expire because, consistent with Colorado law, it abandoned its acceleration of the mortgage by withdrawing the 2011 NED and subsequent NEDs, thereby restoring the note's original maturity date for statute of limitations purposes each time it did so. The Bank notes that it communicated its abandonment of acceleration to Mr. Ashmore on multiple occasions. For instance, in March 2015, the Bank told him the amount due was 39 payments, not the accelerated amount. It also told him it would send out new notices of default and supplemental letters before rescheduling a sale. In April 2015, the Bank sent Mr. Ashmore new notices of default and filed a new NED, further demonstrating that the previous foreclosures had been abandoned.

The Court agrees with the Bank's position. Although the Colorado Supreme Court has not addressed the issue, at least two divisions of the Colorado Court of Appeals have held that a lender can abandon the acceleration of a note. In *Peterson*, 442 P.3d at 1011, the court surveyed the law from other jurisdictions and found that "[t]he great weight of authority recognizes this right of abandonment." Adopting the same rule for Colorado, the division determined that the lender abandoned its previous acceleration of the loan "by not only withdrawing the foreclosure but also be communicating its abandonment to the borrower." *Id.* As a result, the loan was restored to its original nature as an installment loan, and the limitations period did not expire. *Id.*; *see also Paggen v. Bank of Am., N.A.*, 781 F. App'x 779, 784-85 (10th Cir. 2019) (unpublished) (following *Peterson* and finding lender twice abandoned acceleration by

withdrawing its NEDs).

In *Igou*, 459 P.3d at 782, the division found that the lender "manifested its intent to abandon the [previous] acceleration by clear affirmative conduct" by withdrawing the NED and sending the borrower a letter "offering him another chance to cure the default and avoid paying the entire accelerated balance of the debt." The letter also reaccelerated the debt, starting a new six-year limitations period. *Id.*

Here, Appellant contends that the Court should exercise its discretion not to follow *Peterson* and *Igou* because the Colorado Supreme Court has not yet recognized a lender's right to abandon acceleration. (ECF No. 32 at 10, 14.) However, there is no indication that the Colorado Supreme Court would reject these decisions and decline to recognize such a right. Accordingly, the Court finds *Peterson* and *Igou* are persuasive authority for how the Colorado Supreme Court would likely rule on this issue.

Appellant also contends that even under *Peterson* and *Igou*, the Bank's actions were not sufficient to reinstate the mortgage because abandonment of acceleration requires "a clear affirmative act." (ECF No. 23 at 14-15.) She contends the present circumstances are distinguishable from those in *Peterson* and *Igou* because the Bank continued to pursue foreclosure remedies after it withdrew the 2011 NED. (*Id.* at 18.) But even though the Bank pursued foreclosure after issuing the 2013 NED, this does not demonstrate it did not effectively abandon its previous acceleration. Appellant cites no authority to the contrary. In addition, Appellant argues that the Bank's communications with Mr. Ashmore in 2015, through a representative with no corporate authority, were inadequate to demonstrate its intent to abandon acceleration. But, once again, she fails to cite any authority supporting her position.

Appellant also attempts to distinguish this case from *Peterson* and *Igou* by emphasizing that the Ashmores took no affirmative actions to engage with the Bank or its servicers to reinstate the loan after the initial acceleration. (*Id.* at 17-18.) But Appellant fails to explain how the Ashmores' conduct is relevant to the question of whether *the Bank* manifested its intent to abandon acceleration by a clear affirmative act. *See Igou*, 459 P.3d at 780 (stating that *a creditor* may abandon acceleration but must manifest its intent to do so by a clear affirmative act).

Quoting *Hassler v. Account Brokers of Larimer County, Inc.*, 274 P.3d 547, 557 (Colo. 2012), Appellant argues that "the creditor's course of conduct following acceleration is irrelevant." But *Hassler* does not involve abandonment of acceleration; rather, the court determined that, for statute of limitations purposes, the creditor clearly and unequivocally exercised its option to accelerate Hassler's debt when it repossessed his vehicle and demanded full payment of the entire balance of the loan. *Id.* at 554. Thus, the fact that the creditor continued to send Hassler monthly statements did not "un-ring" the bell of acceleration. *Id.* at 557. Appellant's reliance on *Hassler* is misplaced here because there is no dispute that the Bank first accelerated the loan in 2010 and because the quotation above has nothing to do with *abandonment* of acceleration.

Appellant also argues that the bankruptcy court erred by precluding testimony about Mr. Ashmore's bankruptcy discharge. Appellant relies on *Silvernagel v. U.S. Bank National Association*, 503 P.3d 165 (Colo. App. 2021), for the proposition that a bankruptcy discharge commences the limitations period. She also argues that the Bank was not prejudiced by her failure to properly disclose the bankruptcy discharge because it was a matter of public record and was nevertheless disclosed before trial. (ECF No. 23 at 24.)

7

In its Response, the Bank argues, presciently, that *Silvernagel* might not stand given the Colorado Supreme Court's grant of certiorari in the case, while also noting that its foundation in Washington case law has since been eviscerated by Washington courts. (*See* ECF No. 28 at 31-33.) After briefing was completed in this case, the Colorado Supreme Court issued its decision reversing and remanding *Silvernagel*. *U.S. Bank Nat'l Ass'n v. Silvernagel*, 528 P.3d 163 (Colo. 2022). There, the Colorado Supreme Court determined that the appellate division erred by finding Silvernagel's bankruptcy discharge commenced the limitations period for the lender's claim. *Id.* at 167 ("Not only is the division's rule unsupported by Colorado law, but the out-of-state case law on which it relied has since been repudiated by a Washington appellate court."). In light of this decision and related developments in Washington courts, Appellant has failed to establish that Mr. Ashmore's bankruptcy has any legal relevance to the Bank's claim in this case. Therefore, the Court finds that any error in precluding evidence about Mr. Ashmore's bankruptcy discharge was harmless.

**IV.   CONCLUSION**

This appeal is DENIED, the Claim Order is AFFIRMED, and the Clerk is directed to CLOSE this case.

DATED this 27th day of October, 2025.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge

8